# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KIHEEM TAYLOR, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-3524 |
| DAYENA CORCORAN, COMMISSION OF CORRECTION NORTH BRANCH CORRECTIONAL INSTITUTION, CAPTAIN THOMAS SIRES,[1] SAMANTHA KOCH, | * * * | |
| Defendants | | |

\*\*\*

## **MEMORANDUM OPINION**

Plaintiff Kiheem Taylor, an inmate at North Branch Correctional Institution, who is proceeding pro se, filed this suit pursuant 42 U.S.C. § 1983, alleging that he was subjected to an unconstitutional strip search in front of a female correctional officer and in violation of the Fourth Amendment to the United States' Constitution. Defendants Commissioner of Correction, former Commissioner Dayena Corcoran, North Branch Correctional Institution ("NBCI"), Captain Thomas Sires, and Correctional Officer II Samantha Koch moved to dismiss the claim, or alternatively for summary judgment to be granted in their favor. ECF No. 12.[2] The matter is ripe for review, with no need for a hearing. *See* Loc. R. 105.6. For the reasons that follow, Defendants' Motion, treated as one for summary judgment is GRANTED.

---

[1] The Clerk shall amend the docket to reflect Thomas Sires' position as captain. (ECF No. 12-5).

[2] Taylor has moved to amend his Complaint to clarify that he is asserting that his Fourth Amendment rights had been violated, not his Fourteenth Amendment rights, as the original Complaint states. ECF No. 15. Because Taylor proceeds pro se and the Court must grant leave to amend liberally, the Court will grant the motion and read the Original and proposed Amended Complaint in harmony. Taylor also submitted an affidavit of an inmate, James Tanner, ECF No. 15 1-3, which the Court will consider as incorporated into the operative Complaint and as part of the record evidence.

## I. Background

The facts from the record are construed in the light most favorable to Taylor. On January 14, 2016, Taylor was among 34 inmate dietary workers that took part in a surprise strip and cavity search conducted in the NBCI Dining Hall by approximately 14 officers equipped with trained drug detection dogs and three K-9 officers. ECF No. 12-3 at 7. Officer Samantha Koch was posted at a door inside the dining room, where she had a clear view of the entire procedure. Koch stood less than thirty-five feet from where Taylor was stripped and had a clear view of Taylor's genitals. ECF No. 1 at 3; ECF No. 15 at 1. After Taylor was searched and had been leaving the dining hall, Koch asked him if he "ha[d] fun." ECF No. 1 at 3-4; ECF No. 1 at 5. Taylor asserts that "[t]his was the first time and the only time before and since, I was stripped in the presence of a female Officer." ECF No. 1 at 5.

Koch denies viewing, attempting to view, or in any way participating in the strip searches. ECF No. 12-4 at 1. Likewise, Koch maintains she did not make any comments directed at Taylor or any other inmate. *Id.* at 2. Rather, Koch attests that she guarded one of the exits during the strip search, monitoring inmates leaving the dining hall ensuring that staff could enter easily in case of emergency. Koch also attests that her positioning was such that she could not observe the strip searches. *Id.* at 1-2. Captain Thomas Sires corroborates Koch, noting that Koch did not participate at all in the strip search process. ECF No. 12-5 at 1. Sires also affirms that he did not see Koch or any other officer gesture inappropriately toward Taylor or any other inmate during the search. *Id.* at 2.

Taylor filed Administrative Remedy Request (ARP) No. NBCI 0327-16, on February 10, 2016, alleging his strip search was "unlawful and inhumane." ECF No. 12-3 at 3. Taylor asserted there was "no excuse for the blatant and the smirks" on the officers' faces when they ordered him

"to lift my private parts and to bend and sqwat (sic) in front of a female officer." He further alleged the strip search was unsanitary because dogs were present. He complained that he and other naked inmates were recorded on the surveillance camera during the strip search process. *Id.* at 4.[6]

Captain Sires investigated the ARP. As part of Sires' investigation, he interviewed inmate Taylor who said he witnessed Koch standing at the dining hall exit door approximately twenty to twenty-five feet away from the strip-search area. *Id.* at 6-7. Taylor further admitted that no other staff had made any faces or noises during his strip search. When Sires commented that Taylor appeared to have no emotional or physical injury as a result of the strip search and asked if Taylor believed that he is entitled to monetary compensation, Taylor responded "Yep. She was there and shouldn't have been you owe us money." ECF No. 12-3 at 6.

The investigation further revealed that the strip search was conducted in the dining hall so as to avoid disrupting other inmate activities and staff reporting assignments. ECF No. 12-3 at 7. The purpose of the surprise search was "to help eliminate the passing of contraband associated with the upcoming 2016 NFL Super Bowl and to aid in the overall safety and security of the Institution." *Id.* All 34 inmates were searched within 35 minutes and no female staff participated the search. *Id.* Koch had been assigned to one of the entrances to the dining hall. *Id.* The floors and tables in the dining hall were cleaned and sanitized after the meal and before the search.

On February 29, 2016, Acting Warden J. Nines dismissed Taylor's ARP, concluding no violation had occurred during the strip search. ECF No. 12-3 at 3. Taylor appealed the decision which Commissioner Corcoran dismissed. *Id*. at 14. Taylor next filed a grievance with the Inmate Grievance Office (IGO), which administratively dismissed the matter on September 2, 2016. The

---

[6] The video recording of the search was not preserved. Even though DOC policy requires that significant events at a correctional facility shall be recorded and photographed for investigative, evidentiary, and training purposes, ECF 12-3 at 1 ¶5, NBCI claims the strip search was not considered a significant event. Taylor maintains asserts that because he filed his ARP within 30 days of the incident, staff should have saved the recording. ECF No. 18 at 2.

Circuit Court for Allegany County likewise dismissed the appeal from the IGO. *See In the Matter of Kiheem Taylor*, Case No. 01-C-16-044540 (Cir. Ct. Allegany Cty, Apr. 17, 2017).[8]

Taylor thereafter filed suit in this Court, contending that the strip-search violated his rights under Fourth Amendment to the United States Constitution and institutional policy. ECF No. 1 at 6; ECF No. 14; ECF No. 15 at 3. Taylor seeks injunctive relief to prohibit group strip searches and any strip searches of male prisoners in the presence of female officers, "…unless it is an inadvertent encounter or exigent circumstances." *Id.* at 7. He also requests compensatory and punitive damages. *Id.*

## II. Standard of Review

The Court considers Defendants' motion as one seeking dismissal and for summary judgment. When reviewing a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all well-pleaded facts as true and in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). "[F]ormulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).

---

[8] *See* http://www.marylandcase.org (viewed February 14, 2020).

A motion for summary judgment brought pursuant to Rule 56 shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(d); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the non-movant without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses may not proceed to trial. *Bouchat,* 346 F.3d at 526.

**III.   Discussion**

The Defendants challenge the claims on several grounds, to include that the strip search of Taylor did not amount to a Fourth Amendment violation, and that certain of the Defendants are immune from suit. ECF No. 12-1. The Court addresses each argument in turn.

**A.   Defendants not Subject to Suit**

    **1.   NBCI and Maryland Division of Corrections**

Defendants move to dismiss all claims against the "Commission of Correction" and NBCI because these entities are not "persons" subject to suit under § 1983. Section 1983 authorizes a plaintiff to bring a suit for damages against any "person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The Maryland Division of Corrections and NBCI are both arms of the State; accordingly they are not "persons" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983."); *see also* Md. Code Ann., State Gov't § 8–201(b)(16) (West 2015) (identifying the Maryland Department of Public Safety and Correctional Services as a department of the Maryland state government); Md. Code Ann., Corr. Servs. § 2–201(1) (West 2002) (identifying the Maryland Division of Corrections as a unit within the Maryland Department of Public Safety and Correctional Services). Dismissal is thus warranted on this basis alone.

Alternatively, the Defendants, as State entities, are immune from suit in Federal Court pursuant to the Eleventh Amendment to the United States Constitution, absent narrow exceptions not at issue here. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). The claims against the Division of Correction and NBCI are therefore dismissed with prejudice.

2. **Defendants Acting in their Official Capacities**

The remaining Defendants next contend that the claims must be dismissed if brought against them in their official capacities. Eleventh Amendment immunity reaches not only a State and its agencies, but bars suit against state employees for acts taken in their official capacities. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection"). This is because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). As state employees, Defendants Corcoran, Sire, and Koch

6

cannot be sued for acts taken in their official capacities. To the extent Taylor raises official-capacity claims, they are dismissed with prejudice.

### 3. Defendant Corcoran

For liability to exist under 42 U.S.C. § 1983, a defendant must be personally involved in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Taylor does not allege with specificity that Corcoran had any personal involvement the strip search, and instead claims that Corcoran is "legally responsible for the overall operation of the Department and each institution under his [sic] jurisdiction, including North Branch Correctional Institution." ECF No. 1 at 102 ¶4.[9]

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Rather, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), *quoting Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability, therefore, may attach under § 1983 if a plaintiff establishes: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices' "; and (3) "that there was an 'affirmative causal

---

[9] Taylor's appeal of this decision was dismissed by Commissioner Corcoran. ECF No. 12-3 at 14. Corcoran's signature on the decision alone is not sufficient to demonstrate personal participation in the matters under consideration.

link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Taylor has not averred any facts, or submitted any evidence, that demonstrates Corcoran acted with deliberate indifference to a known constitutional violation. Nor can the Court discern any set of facts that would alter this analysis, if pleaded. Accordingly, all claims against Corcoran are dismissed with prejudice.

**B.     Constitutional Claims Against Remaining Defendants in their Individual Capacities**

Taylor contends that the circumstances surrounding his strip search violated his Fourth Amendment rights. The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. amend. IV. However, prisoners' rights in this respect are diminished by virtue of their status as inmates. *See Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir.1981); *Hudson v. Goodlander*, 494 F. Supp. 890, 891 (D. Md. 1980). Accordingly, a body cavity search does not violate an inmate's Fourth Amendment rights if the search is reasonable and not punitive. *Bell*, 441 U.S. at 545–546, 558–61.

Reasonableness of the search is determined when considering the scope of the intrusion, the manner in which it is conducted, the justification for the search, and the place in which it was conducted. *Bell*, 441 U.S. at 559. "The reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed." *Coley v. Harris*, 30 F. Supp. 3d 428, 434 (D. Md. Jul. 7, 2014), quoting *Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001). Courts also should give great deference to officials' decisions as they relate to the overall administration of the facility. *Bell,* 441 U.S. at 547. That said, the United States Court of Appeals for the Fourth Circuit has recognized that inmates maintain "a special sense of privacy in their genitals, and involuntary exposure of them in the presence of the other sex may be

especially demeaning and humiliating." *Lee v. Downs*, 641 F.2d at 1119. Accordingly, "when not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons. *Id.*

The record evidence viewed most favorably to Taylor demonstrates that even if Koch could observe the strip search, her presence was reasonably necessary to maintain the security of the prison. The search was conducted for an eminently legitimate purpose -- to prevent contraband from leaving the kitchen -- and performed in the dining hall to avoid disrupting other institutional functions. The search was also conducted efficiently and expeditiously, to minimize the degree of bodily intrusion visited on the inmates. Balancing the institutional needs against this isolated incident, no reasonable trier of fact could conclude the circumstances gave rise to a Fourth Amendment violation. *See Riddick v. Sutton*, 794 F. Supp. 169, 173 (E.D.N.C. 1992); *see also Timm v. Gunter*, 917 F.2d 1093, 1101-1102 (8th Cir. 1990) (opposite sex searches and surveillance upheld); *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (occasional female guard presence at strip search not unconstitutional).

As for Koch's role, the Court credits, as it must, that Koch saw Taylor's genitals, a fact Koch vigorously disputes. That said, Koch was there was to control the exit of the dining hall so as to minimize any further disruption. Moreover, Koch's involvement was hardly a routine event, as this was the first and only time Taylor had been strip searched while a female officer was present. (ECF No. 1 at p. 5 ¶ 28). That Koch may have seen Taylor privates during the search is less than ideal but does not amount to a transgression of constitutional magnitude. *See Lee*, 641 F.2d at 1118-1121. *See also Arey v. Robinson*, 819 F.Supp. 489 (D. Md. 1992); *Hudson*, 494 F. Supp. 890, 891 (D. Md. 1980); *Grummett v. Rushen*, 779 F.2d 491, 495 (9th Cir. 1985); *Thomas v. Shields,* 981 F.2d 1252 (Table) (4th Cir. 1992) (inmate's "right to privacy was not violated by

the occasional, inadvertent encounter with female guards."). Similarly, her supposed remarks about Taylor having "fun" during the strip search, while ill advised, do not, without more, amount to a Fourth Amendment violation. *See Henslee v. Lewis*, 153 Fed. App'x. 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). Summary judgment is therefore granted in Defendants' favor on the Fourth Amendment claim.

As to the Fourteenth Amendment, Taylor appears to have abandoned that cause of action. ECF No. 15. However, because Taylor proceeds pro se, and out of an abundance of caution, the Court will address the sufficiency of the claim nonetheless.

Most broadly construed, the claim may attempt to reach due process violations triggered when an inmate experiences "a typical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Generally, strip and body cavity searches do not, as a matter of law, impose a significant hardship in relation to the ordinary incidents of prison life. *See Bell*, 441 U.S. 545-46 (upholding body cavity strip search of prison inmates to address attempts to secrete contraband); *Fillmore v. Page*, 358 F. 3d 496, 505-6 (7th Cir. 2004) (videotaped strip search not unconstitutional); *Elliott Case v. Lynn*, 38 F.3d 188 (5th Cir. 1994) (visual body cavity search conducted in presence of other inmates and correctional staff reasonable in light of legitimate security concerns); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988) (strip search in hallway reasonable in view of legitimate security concerns are not per se constitutionally defective); *Snider v. Hughes*, 59 F.3d 167 (Table), 1995 WL 378519 at *1 (4th Cir. June 27, 1995) ("Body cavity searches of inmates are often necessary and are not violative of the Fourth or Eighth Amendments if reasonable and not motivated by a punitive intent.").

To the extent Taylor persists in his Fourteenth Amendment claim, no evidence exists to support that the search was conducted with an aim toward punishing or humiliating Taylor. Nor

10

did it visit an atypical or significant hardship in relation to the ordinary incidents of prison life. For this reason, Defendants are entitled to summary judgment on this claim.

## IV. Conclusion

For the above-stated reasons, Defendants Corcoran, Commission of Correction, and NBCI are dismissed with prejudice. Claims against Koch and Sires in their official capacities are likewise dismissed with prejudice and summary judgment is granted as to their individual capacity claims. A separate Order follows.

|  |  |
| --- | --- |
| 3/10//20 | /S/ |
| Date | Paula Xinis |
|  | United States District Judge |